# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|                                                              |   |                          |
|--------------------------------------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA,                                    | ) |                          |
|                                                              | ) |                          |
| Plaintiff,                                                   | ) |                          |
|                                                              | ) | No. 04 C 4138            |
| v.                                                           | ) |                          |
|                                                              | ) | Judge George M. Marovich |
| CAPITAL TAX CORPORATION,<br>STEPHEN J. PEDI, and<br>WILLIAM LERCH, | ) |                          |
|                                                              | ) |                          |
| Defendants.                                                  | ) |                          |
|                                                              | ) |                          |
| CAPITAL TAX CORPORATION,                                     | ) |                          |
|                                                              | ) |                          |
| Counter-Plaintiff,                                           | ) |                          |
|                                                              | ) |                          |
| v.                                                           | ) |                          |
|                                                              | ) |                          |
| UNITED STATES OF AMERICA,                                    | ) |                          |
|                                                              | ) |                          |
| Counter-Defendant.                                           | ) |                          |
|                                                              | ) |                          |
| CAPITAL TAX CORPORATION,                                     | ) |                          |
|                                                              | ) |                          |
| Cross-Plaintiff,                                             | ) |                          |
|                                                              | ) |                          |
| v.                                                           | ) |                          |
|                                                              | ) |                          |
| STEPHEN J. PEDI, and<br>WILLIAM LERCH,                       | ) |                          |
|                                                              | ) |                          |
| Cross-Defendants.                                            | ) |                          |

**MEMORANDUM OPINION AND ORDER**

Plaintiff the United States of America ("United States" or the "government") filed suit against defendants Capital Tax Corporation ("Capital Tax"), Stephen J. Pedi ("Pedi") and William Lerch ("Lerch") alleging claims arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675. Capital Tax filed counterclaims against the government and against the other defendants. In a previous ruling in this case, the Court granted the government judgment on the pleadings with respect to Capital Tax's first and second counterclaims against the government. Capital Tax filed an amended counterclaim, and the government moves to dismiss Capital Tax's first counterclaim in its amended countercomplaint.

**I.     Background**

   **A.     The CERCLA framework**

CERCLA (sometimes called the Superfund law) "requires that sites contaminated by toxic wastes be cleaned up by or at the expense of the persons responsible for the contamination." *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 660 (7th Cir. 1995). CERCLA "grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994)).

Under CERCLA, the EPA has the authority to effectuate toxic waste cleanup in a couple of ways. First, it can take responsive action itself and then seek reimbursement from the potentially responsible party. 42 U.S.C. § 9607(a)(4)(A). Second, the EPA may require the responsible party to clean up the property. 42 U.S.C. § 9606(a). Specifically, the EPA can issue

an administrative order setting out the required remedial action. The EPA can enforce its order by filing suit in federal district court, and in that suit, the EPA can also seek civil penalties and punitive damages against a party who failed to comply with the administrative order. 42 U.S.C. §§ 9606(b), 9607(c)(3). The district court cannot, however, grant civil penalties or punitive damages against a party that had "sufficient cause" for not complying with the order. 42 U.S.C. §§ 9606(b), 9607(c)(3).

For its part, the recipient of the administrative order has at least two options upon receiving the order if it does not believe that it is responsible for the cleanup. First, it can decline to comply with the order and wait for the EPA to file an enforcement suit. Alternatively, the recipient can comply with the order and then petition the EPA for reimbursement of its costs plus interest. 42 U.S.C. § 9606(b)(2)(A). The purpose of this provision is to "encourage potentially responsible parties to conduct a cleanup expeditiously and postpone litigation about responsibility to a later time." *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1324 (7th Cir. 1990).

**B.     Facts relevant to Capital Tax's counterclaim**

In October 2001, Capital Tax purchased property at a tax sale. Specifically, Capital Tax obtained the tax deeds to several, but not all, parcels at 7411 to 7431 S. Green Street in Chicago, Illinois (the "Site"). At the time Capital Tax obtained the tax deeds, the Site contained paint and other materials left behind by previous owners.

The paint and other materials at the Site caught the attention of the City of Chicago's Department of the Environment ("CDOE"). In April 2002 and July 2003, CDOE found hazardous substances at the Site. In July 2003, CDOE referred the Site to the EPA. After

inspecting the Site, the EPA concluded that the Site contained hazardous materials, that hazardous waste had been released at the Site, and that future releases of hazardous materials at the Site were threatened.

On August 15, 2003, the EPA issued a Unilateral Administrative Order ("UAO") demanding that Capital Tax clean up its Site parcels. The UAO set out the work to be done at the site. Specifically, it ordered Capital Tax to, among other things: (1) remove about 10,000 containers of various sizes, 70 tanks and any spillage of waste materials on the floors and in the soil; (2) remove debris to allow safe access to the containers and tanks; (3) stage drums/containers by chemical compatibility; and (4) remove the materials and clean the residue from the tanks before disposal. The UAO also required Capital Tax to notify the EPA–within three business days after the effective date of the UAO–of its intent to comply with the UAO. (The UAO became effective seven days after it was issued, unless the respondent requested a conference, in which case it became effective five days after the conference.) In addition, the UAO set out the non-compliance penalties, which included civil penalties of up to $32,500 per violation per day and punitive damages of up to three times the amount of any cost incurred by the United States as a result of the violation.

Capital Tax did not comply with the Order. Instead, Capital Tax sent to the EPA several letters in which it denied liability. When Capital Tax (and the other defendants) failed to comply with the UAO's, the EPA cleaned up the Site itself. Beginning on October 6, 2003, the EPA, through contractors, removed more than 18,000 drums and containers. The EPA inspected and cleaned the underground storage tanks and manholes. It excavated the soil, backfilled the area and planted grass. The EPA cleaned the interiors of the buildings to remove potential

contamination.  Finally, the EPA coated lead-painted tanks to prevent the release of lead.  Thus far, the EPA has incurred at least $2,036,914.12 in response costs.

The United States filed suit against Capital Tax, among others, to recover costs it incurred or would incur taking remedial action at the Site.  The United States also seeks civil penalties and punitive damages against defendants for alleged violations of unilateral administrative orders.

Capital Tax filed counterclaims against the United States.  In its first counterclaim, Capital Tax alleged that CERCLA § 106(a) denies a potentially responsible party due process.  The Court previously granted the government's Rule 12(c) motion with respect to the due process claim.  Capital Tax filed an amended countercomplaint in which it asserts a similar due process claim, this time alleging that the EPA followed a "pattern or practice" that violates the due process rights of UAO recipients.  Specifically, in the first counterclaim of its amended countercomplaint, Capital Tax alleges that the EPA threatens potentially responsible parties with penalties and punitive damages even when the potentially responsible party presents the EPA with facts demonstrating that the EPA's order was invalid.  Capital Tax alleges that the EPA threatens potentially responsible parties with sanctions in order to coerce them into complying with UAO's.  Capital Tax also asserts that the EPA uses its UAO authority even when no emergency exists.  Capital Tax seeks a declaratory judgment that the EPA's practice deprives UAO recipients of procedural due process.  The EPA moves to dismiss this first counterclaim of Capital Tax's amended countercomplaint.

II.     **Standard on a motion to dismiss**

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Discussion

### A. Capital Tax's original due process counterclaim

In its original counterclaim, Capital Tax asserted a constitutional challenge to the CERCLA provisions which allow the EPA to issue unilateral administrative orders (requiring potentially responsible parties to clean up hazardous waste sites) and to seek civil penalties and punitive damages for failure to comply with such orders. Capital Tax claimed that the threat of massive penalties (including civil fines of up to $32,500 per day per violation and punitive damages) and the lack of a pre-enforcement hearing constituted a denial of due process. This Court rejected the claim, granting judgment on the pleadings to the EPA. The Court ruled:

> Every court that has considered these issues has concluded that the statutory scheme does not violate due process. *Employers Ins. of Wausau v. Browner*, 52 F.3d 656 (7th Cir. 1995); *Solid State Circuits, Inc. v. United States EPA*, 812 F.2d 383 (8th Cir. 1987); *Wagner Seed Co. v. Daggett*, 800 F.3d 310 (2d Cir. 1986); *General Electric Co. v. Johnson*, 362 F. Supp.2d 339 (D.D.C. 2005).
>
> The Fifth Amendment to the Constitution states that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const., Amend. V. "[S]ome form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Capital Tax argues that when the EPA issues a unilateral administrative order, the EPA deprives a potentially responsible party of property without due process of law. The Court disagrees. While the Court agrees that the issuance of the UAO occurs without a prior hearing, the statutory scheme is set up so that no *deprivation* occurs until after a judicial hearing. The UAO is not self-enforcing, and the EPA lacks the power to enforce a UAO. Rather, in order to enforce the cleanup outlined in the UAO, the EPA must file suit in district court. It is that lawsuit that provides the potentially responsible party with due process of law, and that due process occurs before any deprivation. *General Electric Co. v. Johnson*, 362 F. Supp.2d 327, 339 (D.D.C. 2005) ("Under the statutory language and structure, EPA does not through the mere issuance of a UAO under section 106 deprive a [potentially responsible party] of a significant property interest without judicial intervention."); *Employers Ins. of Wausau v. Browner*, 848 F. Supp. 1369, 1374-75 (N.D. Ill. 1994) ("In order to compel compliance with the order and to collect penalties for failure to comply, the EPA is required to bring an enforcement action pursuant to CERCLA § 9606(b)(1). At this stage, the [potentially responsible party "PRP"] is fully entitled to judicial review of the order, including the question of liability. [Internal citations omitted.] Accordingly, a PRP is fully entitled to obtain judicial review of the EPA's order prior to being deprived of its property."), *aff'd,* 52 F.3d 656 (7th Cir. 1995); *cf. Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 218 (1994) (rejecting due process argument where "[a]lthough the Act's civil penalties unquestionably become onerous if petitioner chooses not to comply, the [penalty assessment of the Secretary of the Mine Safety and Health Administration] becomes final and payable only after full review by both the Commission and the appropriate court of appeals."). The mere delay of the due process does not mean that due process was lacking. *See Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 295 (6th Cir. 1991) ("The CERCLA statutory scheme, as amended by SARA, merely serves to effectuate a delay in a plaintiff's ability to have a full hearing on the issue of liability and does not substantively affect the adequacy of such hearing.").

Capital Tax also argues that the statutory scheme violates its due process rights in another way: that the penalties are so severe that upon receipt of a UAO, a potentially responsible party is left with the unconstitutional choice between complying with the statute and not obtaining review or suffering crushing penalties. The argument rests on *Ex Parte Young*, where the Supreme Court explained that a law imposing:

> such conditions upon the right to appeal for judicial relief as work an abandonment of the right rather than face the conditions upon which it is offered or may be obtained is . . . unconstitutional. It may therefore be said that when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the

validity of the legislation, the result is the same as if the law in
terms prohibited the company from seeking judicial construction
of laws which deeply affect its rights.

*Ex Parte Young*, 209 U.S. 123, 147 (1908). Such laws are, thus, "unconstitutional on their face." *Ex Parte Young*, 209 U.S. at 148. Unfortunately for Capital Tax, the Seventh Circuit has already rejected its argument.

To be sure, a recipient of a UAO does not have an easy choice. The Seventh Circuit has described the problem Capital Tax faced when it received the UAO from the EPA:

> Without the provision authorizing suits for reimbursement of
> response costs, a person potentially responsible for toxic-waste
> pollution who was served with a clean-up order would have just
> two choices: comply with the order, or refuse to comply, in which
> event the EPA could either seek a mandatory injunction against the
> refuser, § 9606(a), or hire someone to clean up the polluted site at
> the EPA's expense and then seek to recover that expense by a suit
> against the person it had ordered to do the clean-up. § 9613(h)(1).
> The defendant would have an opportunity in that suit to put the
> EPA to its proof that the Superfund law really did require the
> defendant to clean up the site. [Internal citation omitted.] But it
> could not challenge the order in advance of having to comply; that
> route is, as we shall see, closed. Its choice would be to comply or
> to run the risk of being found to have violated a valid order. This
> would be a hard choice because there are heavy sanctions for
> disobeying a valid clean-up order, including large civil fines and
> treble damages. §§ 9606(b)(1), 9607(c)(3). We stress 'valid'; it is
> of course a good defense to a suit to collect these amercements that
> the order is invalid. Even if it is valid, the district court in which
> sanctions are sought can abate them in whole or in part if
> persuaded that the party had a reasonable though erroneous basis
> for believing that the clean-up order was invalid. . . . Still, there
> is a risk that the court will not find that the party acted reasonably,
> and this risk places pressure on the party to comply even if it has
> serious doubts whether the order is valid. . . .
>
> The provision for reimbursement trims the horns of this dilemma
> by offering a party served with a clean-up order a third way.
> [Internal citations omitted.] It need not disobey the order and risk
> heavy sanctions. It need not obey and swallow the heavy costs of
> compliance. It can obey and then when it has complete the clean-
> up required by the order sue for the return of its expenses on the

ground that it was not a responsible party within the meaning of the statute after all.

*Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 661-662 (7th Cir. 1995).

Unlike in *Ex Parte Young*, Capital Tax is not faced with the decision between (a) not complying, challenging the statute and paying huge penalties if it loses the challenge and (b) complying and thereby foregoing the chance to challenge the order. It has *two* safety nets that were not available in *Ex Parte Young*. First, even if it *loses* its challenge, it is protected from civil penalties and punitive damages both by the "sufficient cause" defense (which disallows such penalties where the potentially responsible party had sufficient cause not to comply) and by the judge's discretion not to order such penalties. This protection avoids the *Ex Parte Young* problem and renders the provisions constitutional. *See Solid State Circuits*, 812 F.3d at 391 ("We are . . . convinced that 'sufficient cause' as used in CERCLA § 107(c)(3) may be constitutionally interpreted to mean that treble damages may not be assessed if the party opposing such damages had an objectively reasonable basis for believing that the EPA's order was either invalid or inapplicable to it."); *Wagner Seed*, 800 F.3d at 316-317 (rejecting *Ex Parte Young* due process challenge to CERCLA § 106 and 107(c)(3)).[1] The second safety net is that Capital Tax could have complied with the UAO and then sought reimbursement from the government on the grounds that it had a valid defense to the order. The Seventh Circuit concluded that these safety nets provide the necessary constitutional protection. *Wausau*, 52 F.3d at 664 ("The risk of losing and being made to pay heavy sanctions, a risk mitigated by the defense of sufficient cause as glossed in *Solid State Circuits*, would not violate the Constitution even if there were no reimbursement provision, 812 F.2d at 389-92; it certainly does not violate it given the additional if imperfect remedy which [the reimbursement] provision grants.").

The United States is entitled to judgment as a matter of law on Capital Tax's first counterclaim, and the Court grants the government's motion for judgment on the pleadings with respect to that claim.

(*See* May 19, 2005 Memorandum Opinion and Order).

### B. Capital Tax's amended due process counterclaim

---

[1] Capital Tax asserts that the "sufficient cause" safeguard is illusory because it is not "sufficiently discernable" to provide any real protection to a potentially responsible party who has received a unilateral administrative order. The Court need not consider this argument because (as will be explained) the Seventh Circuit has concluded that the existence of the reimbursement provision suffices.

In the first counterclaim of its amended countercomplaint, Capital Tax alleges that the EPA threatens potentially responsible parties with penalties and punitive damages even when the potentially responsible party presents the EPA with facts demonstrating that the EPA's order is invalid. Capital Tax alleges that the EPA threatens potentially responsible parties with sanctions in order to coerce them into complying with UAO's. Capital Tax describes its claim as a "pattern or practice" claim.

As a threshold matter, the government argues that Capital Tax lacks Article III standing to assert its "pattern or practice" due process claim. The minimum standing requirements are: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). An "injury in fact" is "an invasion of a legally protected interest" which is both "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. The "party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. at 561. On a motion to dismiss, the Court considers whether the plaintiff has adequately *alleged* facts supporting standing. *Lujan*, 504 U.S. at 561 (jurisdiction must be established "with the manner and degree of evidence required at the successive stages of the litigation.").

Capital Tax argues that it has standing because the EPA has issued it a UAO. Capital Tax fails to allege, however, that it faces an imminent threat of receiving a UAO in the future. Where, as here, the counterplaintiff seeks injunctive relief, past exposure does not support standing. As the Supreme Court noted in *Lujan*, "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any

continuing, present adverse effects.'" *Lujan*, 504 U.S. at 564 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Like the plaintiffs in *Lujan*, Capital Tax needed to alleged an imminent threat of future harm, i.e., that it could expect another UAO from the EPA. It failed to do so. Accordingly, this Court agrees with the other district court that found a lack of standing to pursue a CERCLA pattern or practice challenge where the plaintiff failed to show that it was likely to receive another order from the EPA. *Raytheon v. U.S.A.*, 435 F. Supp.2d 1136, 1158 (D. Kan.) ("because Raytheon has not demonstrated any credible threat that the EPA will issue against it another section 106 order, Raytheon has not demonstrated an injury in fact. 'Under such circumstances, we have no assurance that the asserted injury is 'imminent'–that it is 'certainly impending.'' Raytheon therefore lacks Article III standing to assert its 'pattern and practice' challenges.") (internal citations omitted). Capital Tax's first counterclaim of its amended countercomplaint is dismissed with prejudice for lack of jurisdiction.[2]

The reason the Court is dismissing the claim with prejudice is that even were Capital Tax able to amend the claim to include allegations sufficient to confer jurisdiction, the claim would fail as a matter of law on the merits. Capital Tax's amended claim differs from its original counterclaim in only two respects: 1) it tosses in the words "pattern or practice" and complains about the EPA's coercive application of the statute and (2) it seeks injunctive relief. At bottom,

---

[2]The Court is not swayed by the two cases Capital Tax cites to support its standing argument. First, in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the Supreme Court did not consider the issue of injury in fact–it was assumed that the court had jurisdiction. *McNary*, 498 U.S. at 491 ("Petitioners do not deny that those violations caused injury in fact to the two organizational plaintiffs as well as to the individual members of plaintiff class."). In addition, to the extent the court in *General Electric v. Johnson* concluded that past application of the allegedly unlawful practice to General Electric conferred jurisdiction over a claim for injunctive relief, this Court respectfully disagrees. *General Electric Co. v. Johnson*, 362 F. Supp.2d 327, 337 (D.D.C. 2005).

though, Capital Tax's complaint about EPA's process is the same as its prior complaint about the statutory scheme: that the penalties coerce UAO recipients into complying without due process of law. The Court already concluded that the statute did not violate due process because the statutory scheme was set up such that no deprivation occurred until *after* a hearing. Even if, as Capital Tax alleges, the EPA threatens punitive damages and is coercive in applying the statute, the UAO recipient still gets a hearing *before* any deprivation. Thus, the EPA's process does not violate due process. Nor would the EPA's coercion and threats cause an *Ex Parte Young* problem. As the Court explained with respect to the original counterclaim, CERCLA provides two safety nets to the UAO recipients: the sufficient cause defense and the fact that a UAO recipient can comply and seek reimbursement from the government. The recipient is entitled to these safety nets even if, as Capital Tax alleges, the EPA is coercive and threatens punitive damages when it issues the UAO. Accordingly, Capital Tax's claim would fail as a matter of law even if the Court had jurisdiction to consider it.

## IV. Conclusion

For the reasons set forth above, the Court grants the United States' motion to dismiss. Capital Tax's first counterclaim of its amended countercomplaint is dismissed with prejudice.

ENTER:

George M. Marovich
United States District Judge

DATED: February 8, 2007