**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 4138 |
| v. | ) |
| | ) Judge George M. Marovich |
| | ) |
| CAPITAL TAX CORPORATION, | ) |
| STEPHEN J. PEDI, and | ) |
| WILLIAM LERCH, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| CAPITAL TAX CORPORATION, | ) |
| | ) |
| Cross-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEPHEN J. PEDI, and | ) |
| WILLIAM LERCH, | ) |
| | ) |
| Cross-Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff the United States of America ("United States" or the "government") filed suit against defendants Capital Tax Corporation ("Capital Tax"), Stephen J. Pedi ("Pedi") and William Lerch ("Lerch") asserting claims arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675. Before the Court is the government's motion to approve a consent decree between the government and defendant Pedi. For the reasons set forth below, the Court approves the consent decree.

## I. Background

The Court has already found each defendant liable to the government on Count I, pursuant to CERCLA §§ 107(a) and 113(g)(2). The Court has also granted the government summary judgment with respect to damages as to defendants Lerch and Capital Tax. The Court found Capital Tax and Lerch each to be jointly and severally liable to the government in the amount of $2,681,337.79. The Court found Capital Tax to be liable to the government for civil fines in the amount of $230,250.00 and found Lerch to be liable to the government for civil fines in the amount of $220,500.00 and civil penalties in the amount of $23,100.00.

In the consent decree, in order to resolve the claims against him, Pedi agrees to pay the government $330,000.00 by December 31, 2007. Pedi also agrees to pay interest on that amount from thirty days after the date of entry of the consent decree until the date of payment. The government agrees to release a lien it holds over Pedi's property. The government also agrees not to sue Pedi under §§ 106(a) or 107(a) of CERCLA with respect to the removal action at the Site at issue in this case. The government reserves its right to pursue Pedi for, among other things, criminal liability, liability for future releases at the Site and liability for releases outside of the Site. The consent decree also gives the government certain access rights to portions of the Site owned or controlled by Pedi.

## II. Discussion

Before signing a consent decree, the Court must satisfy itself that the decree is reasonable. *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985). In *Donovan*, the Seventh Circuit explained:

> A federal judge has the full powers of an equity judge. So if third parties complain to him that the decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside. Even if no third party complains, the judge has to consider whether the decree he is being asked to sign is lawful and reasonable, as every judicial act must be.
>
> \* \* \*
>
> Although a judge thus must, before signing an equity decree that either affects third parties or imposes continuing duties on him, satisfy himself that the decree is reasonable ('fair, reasonable and adequate,' in the usual formulation, but we think 'reasonable' sums it up fairly and adequately) how deeply the judge must inquire, what factors he must take into account, and what weight he should give the settling parties' desires will vary with the circumstances. The flexible character of the decision makes generalization difficult; but it is safe to suggest that the limitations of judicial competence and the desirability of encouraging out-of-court settlements in order to lighten the judicial caseload create a presumption in favor of approving the settlement.

*Donovan*, 752 F.2d at 1177 (internal citations omitted).

The proposed consent decree in this case requires Pedi to pay the EPA $330,000.00 plus interest. By agreeing to pay $330,000.00 plus interest, Pedi will avoid the fate of the other two defendants, each of whom has been found jointly and severally liable to the government in the amount of $2,681,337.79. Pedi also avoids any additional civil fines and punitive damages.

The amount for which the government is willing to settle with Pedi is based on his ability to pay. Pedi is 74 years old and works as a roofing contractor. The government put forth evidence that Pedi needs the income from his work as a roofing contractor to pay his living expenses.

Pedi's only assets are four pieces of property, which the government believes he fraudulently transferred. Accordingly, they have included those assets in determining his ability

to pay. The government put forth evidence that two of the pieces of property could not be sold to raise settlement proceeds. First, Pedi has little equity in his home due to a mortgage and necessary repairs. Second, the government concluded that Pedi could not sell a second property because it is the site of his business, and he needs to operate his business in order to pay his living expenses. The government put forth evidence that Pedi is expecting a distribution payment of $250,000.00 with respect to a third property. Finally, the government concluded that Pedi could sell or mortgage a fourth property, which has a market value of approximately $95,000.00.

The Court concludes, based on Pedi's ability to pay, that the consent decree is reasonable. It requires Pedi to pay $330,000.00 plus interest, which is approximately the same amount as his net assets. Given that Pedi cannot pay more, the Court deems the consent decree to be reasonable.

### *Capital Tax's objections*

Capital Tax objects to the consent decree. Essentially, it argues that the consent decree is unreasonable because it is inconsistent with CERCLA's goal of making polluters pay the cost of cleaning up their pollution. Capital Tax argues that because, in its view, Pedi is a more culpable polluter than it, Pedi should be made to pay a larger share of the response costs.

To be sure, the consent decree affects how much of the government's response costs Capital Tax will pay relative to Pedi. Absent the consent decree, Capital Tax is jointly and severally liable for response costs in the amount of $2,681,337.79, and, if it actually pays that amount, Capital Tax has a right of contribution against Pedi and Lerch. *See* 42 U.S.C. § 9613(f)(a). If the consent decree is approved, the amount for which Capital Tax is jointly and

severally liable would be reduced to $2,351,337.79, but Capital Tax would also lose its ability to seek contribution from Pedi.  *See* 42 U.S.C. § 9613(f)(2) ("A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.").  The consent decree would not affect Capital Tax's ability to seek contribution from Lerch.

But while it is true that the consent decree affects Capital Tax, the Court disagrees that it affects Capital Tax in a way that is inconsistent with CERCLA.  It is the very language of CERCLA that resulted in Capital Tax's being held jointly and severally liable, and it is the very language of CERCLA which limits Capital Tax's ability to seek contribution from Pedi if this Court approves the consent decree.  So the Court fails to see how approving the consent decree could be *inconsistent* with CERCLA.  *See United States v. Southeastern Penn. Trans. Auth.*, 235 F.3d 817, 825 (3rd Cir. 2000) ("This consent decree does set a floor for American Premier's liability while setting a ceiling for the rail companies' liability.  That is part of the scheme enacted by Congress, and the district court did not abuse its discretion by rejecting the argument that this result made the decree unfair."); *see also United States v. DiBiase*, 45 F.3d 541, 546 (1st Cir. 1995) ("the statutory scheme contemplates that those who are slow to settle ought to bear the risk of paying more if they are eventually found liable.  Congress apparently thought that paradigm fair, and so do we.") (internal citations omitted).

Furthermore, it is not clear that the consent decree affects Capital Tax in a *negative* way.  When the Court considered whether to award punitive damages against Capital Tax in this case, the Court took into account how the consent decree would affect Capital Tax's ability to seek contribution against Pedi.  Because of that effect, the Court declined to award punitive damages,

an award which would have at least doubled the amount for which Capital Tax was jointly and severally liable. In addition, even if Capital Tax were awarded an amount higher than $330,000.00 against Pedi on its contribution claim, there is no evidence that Capital Tax would be able to *recover* more. The government has shown that Pedi cannot pay more than $330,000.00 plus interest.

This brings us to Capital Tax's other objection to the consent decree, which is that it is not convinced that Pedi's ability to pay is limited to $330,000.00 plus interest. But Capital Tax has put forth no evidence that he is able to pay more. Nor has Capital Tax established that the government should be prohibited from introducing its evidence. Capital Tax has not, for example, shown that it requested the documents during discovery and that the government or Pedi failed to supply the documents to Capital Tax. Nor has Capital Tax shown that the government has any incentive to accept from Pedi anything less than what he is able to pay. Finally, the Court is not aware of any reason why the government would be less than diligent in ascertaining Pedi's ability to pay.

The Court concludes that the consent decree between Pedi and the government is reasonable.

## IV. Conclusion

For the reasons set forth above, the Court approves the consent decree. The Court also reduces from $2,681,337.79 to 2,351,337.79 the amount of the government's response costs for which Capital Tax and Lerch are jointly and severally liable.

ENTER:

_____
George M. Marovich
United States District Judge

DATED: September 18, 2007