# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **04 CV 4138** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **Magistrate Judge Young B. Kim** |
| CAPITAL TAX CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | **February 10, 2011** |

## MEMORANDUM OPINION and ORDER

In this civil action brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, the United States of America seeks to recover the costs of an environmental cleanup it conducted at a property allegedly owned by the defendants. The district court allowed the government to add one of the current defendants, Marvin Dukatt, after CERCLA's three-year statute of limitations had expired, based on the government's theory that Dukatt should be equitably estopped from asserting a statute of limitations defense. Currently before the court is Dukatt's Motion to Compel Plaintiff to Respond to Discovery Concerning Plaintiff's Equitable Estoppel Claim. Dukatt seeks an order requiring the United States to respond to his interrogatories and requests for the production of documents regarding the government's equitable estoppel position. The United States argues that the information Dukatt seeks is irrelevant and protected by privileges. For the following reasons, the motion to compel is denied:

## Background

In June 2004 the United States brought its initial complaint in this case against Capital Tax Corporation, Stephen Pedi, and William Lerch, seeking to recover civil penalties, punitive damages, and the costs it incurred in removing hazardous substances from seven parcels of property in Chicago known as the "National Paint and Lacquer Site" ("the Site"). (R. 1.) In its answer, Capital Tax admitted that it owned five of the seven parcels (the other two were held by a land trust owned by Pedi). (R. 3 ¶ 4.) The district judge referred the case to the magistrate judge for discovery supervision, (R. 8), and in January 2006 the United States deposed Dukatt, who had represented himself as an "agent" of Capital Tax. Dukatt testified that Capital Tax had offered to sell him property at the Site, but said that he had "passed" on the offer. (R. 154-5, Dukatt Dep. at 34:3-36:9.) By the close of discovery, neither Capital Tax nor Dukatt had produced any documents providing evidence that Capital Tax and Dukatt had agreed to a sale of the subject property.

In April 2006 the United States moved for summary judgment on liability, and in response, Capital Tax asserted for the first time a "secured creditor defense," arguing that Capital Tax was Dukatt's secured creditor based on an oral agreement with Dukatt to purchase property at the Site. (R. 154 at 7-9.) In support of its defense Capital Tax presented a $15,000 check evidencing Dukatt's partial payment for property at the Site. (R. 154-5, Ex. 1A.) The check's existence came as news to the United States because a Capital Tax shareholder had testified in his deposition that he had been unable to locate any check from

2

Dukatt in connection with a sale of property at the Site. (R. 323-2, Smith Dep 16:21-17:4.) The district court rejected Capital Tax's secured creditor defense and granted in part the United States's motion for summary judgment. (R. 175.) The defendants appealed.

In September 2008 the Seventh Circuit vacated the district court's decision and remanded with instructions for the district court "to give fresh and full consideration to the question whether Capital Tax had an enforceable land sales contract" with Dukatt "and whether the doctrine of equitable conversion applies in this case." *See United States v. Capital Tax Corp.*, 545 F.3d 525, 534 (7th Cir. 2008). The Seventh Circuit noted that Capital Tax had presented some evidence that Dukatt had given partial payment for property at the Site, had taken possession of the property, and had made valuable improvements. *Id.* The court stated that it was unable to determine whether Capital Tax had a valid and enforceable contract for the sale of the property, and instructed the district court to consider "whether the facts show that Dukatt was, in fact, a bona fide buyer." *Id.*

Following the remand the district court re-opened discovery in January 2009 to allow the parties to flesh out the facts surrounding the equitable conversion question. In the course of this second round of discovery Capital Tax produced evidence that Dukatt had entered into an oral agreement with a Capital Tax shareholder to purchase portions of the Site. Contradicting his January 2006 deposition testimony, Dukatt testified in an affidavit that he had reached such an agreement with Capital Tax. (R. 283-8 ¶ 4), and at a second deposition in August 2009, he admitted that he disavowed ownership once the EPA got involved and

3

he learned of the potential clean-up liability, (R. 238-4, Dukatt Dep. at 68:1-13). As Dukatt colorfully explained, "if you and I are drowning and there's one log, I'm going to punch you in the nose and grab the log." (Id. at 69:2-4.)

Based on Dukatt's new testimony, the district court entered an order in March 2010 permitting the United States to add Dukatt as a defendant. (R. 307.) Shortly thereafter, Dukatt moved to dismiss the complaint on the basis that CERCLA's three-year statute of limitations had expired. (R. 315-2, at 2.) In response, the United States argued that under the principle of equitable estoppel, Dukatt cannot benefit from his misrepresentations by invoking the statute of limitations defense. The district court denied Dukatt's motion to dismiss, stating that:

> [a]s the United States paints the picture, during the time that Dukatt was afraid he might be on the hook for the clean-up costs, Dukatt testified that he had never agreed to purchase the land; once the statute of limitations had run, he was willing to testify that he had agreed to purchase the land, which testimony might allow his friends at Capital Tax also to be off the hook for clean-up costs. This is just the situation that equitable estoppel is designed to disallow.

(R. 326 at 2.) The district court emphasized that the United States had "asserted sufficient facts to survive a motion to dismiss on statute of limitations grounds." (Id.)

In October 2010, Dukatt served on the United States interrogatories and requests for the production of documents seeking information regarding the government's decision not to sue Dukatt in 2006. (R. 368, Exs. 1 & 2.) Specifically, Dukatt sought information regarding who decided that he would not be named as a defendant in the original action,

4

when they decided it, and on what basis. (Id. at Ex. 1 at 11-17.) The United States objected to five of the interrogatories (Interrogatories 7 through 11) and two of the document requests (Requests *3 and 7), asserting that the information is privileged and irrelevant in light of the district court's decisions allowing the government to add Dukatt as a defendant and later denying his motion to dismiss. (Id.) In response, Dukatt filed the current motion to compel the United States to produce the requested information and to pay the expenses he incurred in filing the motion. (R. 368 at 13.)

**Analysis**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" or that "appears reasonably calculated to lead to the discovery of admissible evidence." This court has broad discretion in resolving disputes related to discovery. *See Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004). The current motion requires this court to resolve three points of contention: (1) whether the district court's decision at the motion to dismiss stage establishes the law of the case with respect to the question of equitable estoppel; (2) whether the United States has waived any privilege to the requested information by putting at issue its decision not to sue Dukatt before the statute of limitations expired; and (3) whether the United States's invocation of the attorney-client and work-product privileges is overly broad.

5

I.      **The Law of the Case Doctrine**

The United States's objection to the challenged interrogatories and requests for the production of documents is based in part on its assertion that the district court has already decided the equitable estoppel question in its favor. According to the government, the district court's decision denying Dukatt's motion to dismiss represents the law of the case with respect to equitable estoppel. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine promotes "the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Id.* (internal quotation omitted). But the law of the case doctrine is not a "hard and fast" rule. *Tice v. American Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004). A party is free to argue that there is a good reason to depart from a previous decision, such as a change in the law or the submission of substantial new evidence after the first review. *Id.*; *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991) (noting that law of the case doctrine is inapplicable if substantial new evidence is introduced after the first review).

The law of the case doctrine does not bar Dukatt from obtaining additional discovery on the question of equitable estoppel. First, and most importantly, it is not clear that the district court intended its decision denying the motion to dismiss to stand as the last word on equitable estoppel. *See Key*, 925 F.2d at 1061 (noting that the law of the case doctrine does

6

not bar re-examination of issues left open). In considering a Rule 12(b)(6) motion to dismiss, the district court views the facts in the light most favorable to the nonmoving party—here, the government. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). In denying Dukatt's motion to dismiss on statute of limitations grounds, the district court emphasized this standard stating that "[a]s the United States paints the picture," the doctrine of equitable estoppel applies and that the government "has asserted sufficient facts to survive a motion to dismiss on statute of limitations grounds." (R. 326 at 2.) The district court did not say that Dukatt is equitably estopped from asserting the statute of limitations defense going forward at the summary-judgment stage or at trial.

Even if the district court's decision had resolved the equitable estoppel issue, courts in this circuit have been open to revisiting at the summary-judgment stage questions decided on a motion to dismiss when new facts justify reconsideration of the issue. *See Brengettcy v. Horton*, 423 F.3d 674, 680-81 (7th Cir. 2005); *Figueroa v. City of Chicago*, No. 97 CV 8861, 2000 WL 283080, at *5 (N.D. Ill. March 3, 2000). In *Brengettcy*, the Seventh Circuit acknowledged that where one judge considers an issue on a motion to dismiss and a consecutive judge considers it at the summary-judgment stage, the second judge is "not presented with precisely the same question in precisely the same way" as the first. 423 F.3d at 680. In that situation, whether it is proper for the second judge to overturn the first judge's decision turns on whether a party submitted new evidence at the summary-judgment stage providing "a compelling reason to reopen the previously decided question." *Id.* (quotation

7

omitted). Even the cases to which the government points in support of its argument with respect to the law of the case doctrine acknowledge this exception. For example, although the court in *LM Insurance Corporation v. Fed Equities, Inc.*, No. 05 CV 1154, 2008 WL 4378366, at *13 (N.D. Ill. March 28, 2008), refused to revisit at summary judgment a question resolved at the dismissal stage, it based that decision in part on the fact that the evidence presented at both stages was identical. *See also Talton v. Unisource Network Servs., Inc.*, No. 00 CV 7967, 2004 WL 2191605, at *8 (N.D. Ill. Sept. 27, 2004) (refusing to revisit legal issue where key undisputed fact at dismissal stage "remains undisputed" at summary judgment). None of the cases the government cites suggest that a party is barred from seeking discovery on any legal issue that survives a motion to dismiss. Because the law of the case doctrine leaves room for the court to revisit the equitable estoppel issue, Dukatt is not barred here from attempting to discover qualifying evidence.

## II. At-Issue Waiver

The United States argues that even if the law of the case doctrine does not bar discovery regarding equitable estoppel, the information Dukatt currently seeks is protected by the attorney-client and work-product privileges. In response, Dukatt argues that the United States has waived its assertions of privilege by putting at issue the decision-making process of government attorneys who decided not to sue him until after the statute of limitations expired. Dukatt correctly points out that to demonstrate equitable estoppel the United States must establish: (1) that he took active steps to prevent the government from

adding him as a defendant in time; and (2) that the government actually and reasonably relied on his misrepresentations. *See Smith v. Potter*; 445 F.3d 1000, 1010 (7th Cir. 2006). Dukatt argues that because the United States's equitable estoppel claim requires the court to resolve whether the government actually and reasonably relied on his deposition statements, it has waived any privilege attached to the information he seeks.

"The attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity for the purpose of obtaining legal advice." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007). The work-product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which explains: "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Both the attorney-client and work-product privileges are subject to waiver. *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 215 (N.D. Ill. 2001). As Dukatt points out, one way in which a privilege-holder may waive a privilege is by relying on "a legal claim or defense, the truthful resolution of which will require examining confidential communications." *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). The idea behind the implied "at-issue waiver" is that a party should not be allowed to expose privileged information that supports its position while concealing the rest. *See Beneficial Franchise*, 205 F.R.D. at 217. But waiver does not occur simply because privileged information is relevant or because a certain claim is alleged. *Id.*; *Chamberlain Group v. Interlogix, Inc.*, No. 01 CV 6157, 2002 WL 467153, at *3 (N.D.

9

Ill. March 27, 2002). "Rather, to waive the privilege, the party to whom the privilege belongs must affirmatively put at issue the specific communication, document, or information to which the privilege attaches." *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 275 (N.D. Ill. 2004).

The government argues that under Dukatt's waiver theory any party to invoke an equitable estoppel theory will automatically waive its privileges. But Dukatt concedes, as he must, that the mere assertion of equitable estoppel does not result in a blanket waiver. *See, e.g., Beneficial Franchise*, 205 F.R.D. at 217; *Chamberlain Group*, 2002 WL 467153, at *2-*3. Instead, Dukatt argues that in the circumstances of this case, the only way that the government can meet its burden of proving that it actually and reasonably relied on Dukatt's misrepresentations is by disclosing attorney communications and thought processes. Because the Department of Justice is an institutional client, rather than an individual or corporation, there may not be a non-attorney witness who can attest to the government's actual reliance. Accordingly, whether the government has put at-issue privileged information simply by raising the question of its reliance on Dukatt's statements turns on whether such evidence is a prerequisite to the government's burden of proof.

The government argues that its equitable estoppel theory does not require it to disclose privileged information because actual and reasonable reliance is a purely objective question. But the government's legal support for that proposition is fairly thin. The government relies on *United States v. Ohio Edison Co.*, No. C2-99-1181, 2002 WL 1585597, at *3-*6 (S.D. Oh.

July 11, 2002), where Ohio Edison argued that the Environmental Protection Agency should be equitably estopped from enforcing regulations where it failed to give adequate notice. The district court noted that "principles of fundamental fairness" would require it to permit the EPA to intrude on Ohio Edison's privileged materials if its equitable estoppel defense "necessarily and affirmatively put its subjective understanding of the regulations at issue." *Id.* at *3. The government argues—based on that language coupled with the court's determination that Ohio Edison had not waived its privileges—that the elements of equitable estoppel are purely objective. (R. 372, Resp. at 11.)

Even if the language the government relies on—which carries the limited weight of dicta from an unpublished, out-of-circuit decision—supports the meaning the government ascribes to it, it is unclear that the Seventh Circuit would agree that equitable estoppel requires only an objective analysis. The Seventh Circuit has characterized the related defense of equitable tolling, which allows a plaintiff to avoid a statute of limitations bar if "despite all due diligence he is unable to obtain vital information bearing on the existence of his claim," as requiring an analysis of what "a reasonable man" in the plaintiff's position would have known. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Thus when it comes to equitable tolling a plaintiff's "subjective philosophy is not relevant to the reasonableness determination." *Chakonas v. City of Chicago*, 42 F.3d 1132, 1136 (7th Cir. 1994). But the equitable estoppel defense requires not just reasonable reliance (which sounds like the equitable tolling reasonable man standard), but *actual* reliance. *See Smith*;

11

445 F.3d at 1010. The Seventh Circuit has emphasized that even where reliance might be reasonable in a given circumstance, proof of a causal link between the defendant's misconduct and the plaintiff's decision to delay bringing suit is still required. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010); *Flight Attendants Against UAL Offset v. Comm'r of IRS*, 165 F.3d 572, 576-77 (7th Cir. 1999). Unless both elements are present, equitable estoppel does not apply. *Jay E. Hayden Found.*, 610 F.3d at 385.

But the core question presented here is not whether actual reliance requires a subjective or objective analysis, but whether, as Dukatt argues, the government must expose its attorneys' thought processes or other privileged information in order to establish its actual reliance on Dukatt's misrepresentations. In other words, is *direct* evidence that the plaintiff actually relied on the defendant's misrepresentation required for the plaintiff to meet its burden of proof? Language from several cases suggests that it is not. The Seventh Circuit has articulated the evidentiary standard for equitable estoppel in the statute-of-limitations context as requiring "a showing," or facts "tending to show" that the plaintiff relied on the defendant's alleged misconduct. *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (7th Cir. 1992); *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 606 (7th Cir. 1992); *Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir. 1986). The Seventh Circuit's requirement of "a showing" suggests that indirect evidence may be sufficient. In dicta, the Seventh Circuit has stated that clearly proven facts sufficient "to create a strong

12

inference of actual reliance" may be enough to meet the burden of proof. *Prize Steak Prods., Inc. v. Bally's Tom Foolery, Inc.*, 717 F.2d 367, 370 (7th Cir. 1983); *see also Cedar Creek Oil & Gas Co. v. Fidelity Gas Co.*, 249 F.2d 277, 283 (9th Cir. 1957) (noting in connection with equitable estoppel claim that "the fact of reliance may be proved by circumstantial evidence").

In its response to the current motion, the government makes clear that it intends to ask the district court to infer actual reliance from its knowledge of Dukatt's misrepresentations and the timing of its decision to add him to this lawsuit. (R. 372 at 12-13.) Whether that circumstantial evidence will satisfy its burden of proof is a question for the ultimate fact-finder. Clearly, the evidence Dukatt seeks to compel the government to produce would be relevant to the question of actual reliance, especially if he could secure testimony from a DOJ attorney that he or she discounted Dukatt's January 2006 deposition testimony. But, as explained above, privileged information "is not in issue merely because it is relevant." *Hucklo v. City of Oak Forest*, 185 F.R.D. 526, 529 (N.D. Ill. 1999) (quoting *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 362 F.3d 851, 863 (3d Cir. 1994)). Because the government intends to meet its burden of proof without disclosing privileged information, at-issue waiver does not apply here. *See Beneficial Franchise*, 205 F.R.D. at 217. The government must recognize that one result of its decision to withhold the requested information is that it has restricted the kinds of evidence it may be able to offer in support of a motion for summary

judgment or at trial to neutralize Dukatt's statute-of-limitations defense. But that is a risk the government may be assuming by raising the work-product and attorney-client privileges.

## III. Scope of the Government's Privilege Assertion

Having resolved the waiver question in the government's favor, the only remaining dispute is whether, as Dukatt argues, the government's assertion of privilege is impermissibly broad. The challenged interrogatories and document requests ask the government to identify, among other things, each person who made decisions regarding whether to name Dukatt in this case, the dates on which those determinations were made, and any documents relating to those decisions. (*See* R. 368, Ex. 1 ¶¶ 7-11, Ex. 2 ¶¶ *3, 7.) The government objected to these interrogatories on the grounds that they are "protected from disclosure by the attorney work-product and/or attorney client and /or deliberative process privileges," (id. Ex. 1 ¶¶ 7-11), and to the document requests on the grounds that it had "produced all responsive, non-privileged documents as initial disclosures," (id. Ex. 2 ¶¶ *3, 7). Dukatt argues that the government's assertion of privilege is overly broad because, according to him, it covers objective facts that represent details of the information it has already disclosed to the district court in pursuing its equitable estoppel theory at the motion to dismiss stage.[1]

---

[1] In a footnote in its opening brief, Dukatt points out that the government did not produce a privilege log for the withheld documents, but states that there is no reason to discuss the parties' disagreement over whether a privilege log is required. (R. 368 at 3 n.4.) In his reply, however, Dukatt changes course and asserts that the government's failure to produce a privilege log alone is a reason to grant the motion to compel. (R. 374 at 9.) Dukatt has waived the argument for purposes of this motion by raising it only in his reply brief. *See Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009).

Although Dukatt is correct that the work-product and attorney-client privileges do not extend to underlying objective facts, *see Diemer v. Fraternal Order of Police, Chicago Lodge 7*, 242 F.R.D. 452, 458 n.9 (N.D. Ill. 2007), a party may not ask about the identity and knowledge of people with respect to relevant facts "in a fashion that effectively infringes upon the opposing attorney's preparation of the case for trial," *Board of Educ. of Evanston, Twnsp. High Sch. Dist. No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984). Thus a party may ask, for example, who has been interviewed and what they said in the investigation phase of a case, but an interrogatory seeking the identity of the attorney who conducted the interview may cross the line into protected work product. *See EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 347 (N.D. Ill. 2005). Here, the challenged interrogatories and document requests are designed to delve into the government attorneys' preparation of the case. For example, in interrogatories 7, 8, and 11 Dukatt requests the identity of the attorneys who participated in the decision that there was no basis to pursue him as an owner in 2006. Those requests are specifically linked to Dukatt's request that the government produce the documents and information the identified attorneys relied on to make the determination. (R. 368, Ex. 1, ¶¶ 7, 8, 11.) Dukatt also asks for a description of the nature of the role of each of those attorneys in deciding who to sue and when. (Id. ¶ 7.) Although Dukatt has carefully framed those requests as inquiries into mere identities and dates, such information is relevant only to the extent that it serves as a crowbar to pry open a window into the strategic thought process of the government's attorneys. But as the

government argues, those thought processes are protected by the work-product doctrine. *See Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010).

Dukatt also portrays challenged interrogatories 9 and 10 as seeking nothing more than objective facts. In interrogatory 9, Dukatt notes that in its brief in support of its motion to add him as a defendant, the government asserted that before the statute of limitations expired it was "unable to discovery essential information bearing on its new claims." Interrogatory 9 asks the government to identify that "essential information," when and how it was discovered and by who, and a description of earlier efforts to discover essential information. Similarly, in interrogatory 10, Dukatt asks the government to identify what "active steps" it thinks Dukatt took to prevent the government from obtaining essential information, when those steps were taken, and what essential information was involved. Whether or not these inquiries cross the line into the terrain of protected work product may be a closer question, but it is one this court need not resolve because the government responded to these interrogatories by referring Dukatt to the facts it described regarding the "active steps" and "essential information" in its brief in opposition to the motion to dismiss. (*See* R. 368, Ex. 1 ¶¶ 9, 10.) In his motion to compel, Dukatt does not explain whether or why he has any reason to disbelieve the government's assertion that it has already produced the responsive information. To the extent that Dukatt's interrogatories are designed to get behind the attorneys' understanding of why certain facts constitute "active steps" or "essential information," that is the classic kind of piggy-backing off of an opponent's labor that the

16

work-product doctrine is designed to prevent. *See Sandra T.E.*, 600 F.3d at 621-22. Accordingly, Dukatt has not met his burden of explaining why the government's responses are inadequate or showing that the government should be compelled to provide a further response to the challenged interrogatories. *See MSTG, Inc. v. AT&T Mobility LLC*, No. 08 CV 7411, 2011 WL 221771, at *6 (N.D. Ill. Jan. 20, 2011).

## Conclusion

For the foregoing reasons, Marvin Dukatt's Motion to Compel Plaintiff to Respond to Discovery Concerning Plaintiff's Equitable Estoppel Claim is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**