# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 04 CV 4138 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| CAPITAL TAX, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | June 29, 2011 |

## MEMORANDUM OPINION and ORDER[1]

The United States has filed two motions pursuant to 28 U.S.C. § 3205(c)(7), seeking orders of garnishment against certain assets and earnings of defendant William Lerch. In the first motion, the government seeks an order of garnishment directing SunWest Mortgage Company, Inc. ("SunWest") to submit to the United States the monthly payments it owes to Lerch under the terms of a reverse mortgage agreement. In the second, the government moves for an order of garnishment directing Versatile Inks and Coatings, Inc. ("Versatile") to submit to the United States a sum equal to 25% of Lerch's disposable earnings and a sum equal to 100% of payments it has made for his personal expenses after the date the government served Versatile with a citation to discover assets. Also before the court is Lerch's Motion to Apply Florida Exemptions. For the following reasons, Lerch's motion is

---

[1] The court noted during the April 15, 2011 motion hearing that it would issue a report and recommendation on the anticipated post-judgment motions. However, based on *United States v. Meux*, 597 F.3d 835, 837-38 (7th Cir. 2010), this court resolves the pending motions on its own. If either party wishes to file an objection with the assigned district judge, they have 14 days to do so pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1).

granted, the government's first motion is granted, and the government's second motion is granted in part and denied in part without prejudice:

**Background**

In June 2004 the United States sued Capital Tax Corporation, Stephen Pedi, and William Lerch under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675, seeking to recover civil penalties, punitive damages, and the costs it incurred in removing hazardous substances from a property owned by the defendants. (R. 1.) On October 9, 2007, the district judge entered a judgment stating that Lerch and Capital Tax Corporation are jointly and severally liable to the United States for $2,351,337.79. (R. 232.) According to the government, as of May 4, 2011, the outstanding balance on that judgment was $2,734,112. (R. 415 ¶ 1.) The government is now in the process of discovering any of Lerch's assets that are subject to garnishment or turnover to pay down the outstanding judgment.

At the government's request, on October 7, 2010, the clerk of this court issued a citation to discover assets against Versatile. (R. 351.) When Versatile informed the government that it pays Lerch a weekly salary, the government sent it and Lerch a notice of garnishment pursuant to 28 U.S.C. § 3202(b). On January 12, 2011, the clerk issued a citation to discover assets directed to SunWest. (R. 371.) SunWest responded by providing documents showing that it is the transferee of a promissory note and mortgage Lerch executed in favor of World Alliance Financial Corporation to obtain a reverse mortgage

2

against his townhouse, a property with the address 1238 Sleepy Hollow Road, Unit 3, Venice, Florida ("the Venice Property"). (R. 421, Ex. C.) Under the terms of the reverse mortgage, SunWest pays Lerch $1,379.77 per month.

On March 22, 2011, Lerch filed a request for a hearing regarding the garnishment proceedings. (R. 386.) Lerch's request was then referred to this court. (R. 388.) On April 15, 2011, this court granted Lerch's request, (R. 400), and full briefing on the current motions followed.

**Analysis**

Although the main dispute currently before this court centers on whether the government is entitled to garnish particular earnings and assets from the citation respondents, Lerch has filed his own motion asking for an order stating that Florida exemptions apply to the post-judgment proceedings against him. In support of the motion Lerch points to evidence that he has been a Florida resident since the fall of 2007, that he is registered to vote in Florida, and that he maintains a Florida driver's license. (R. 418, Ex. B.) The government did not file a response to Lerch's motion, but in defending its motions it has acknowledged that Florida exemption law applies in theory, arguing that the specific Florida exemptions Lerch relies on are not applicable to his particular circumstances without denying that they apply generally. Because Lerch's motion is unopposed, and because he has demonstrated that he is a Florida resident, his motion is granted. *See In the Matter of Szuets*, 22 B.R. 805, 806 (Bankr. M.D. Fla. 1982) (noting that "[i]t needs no elaborate citation of authority to

3

establish the obvious" proposition that Florida's garnishment exemptions are intended to protect Florida residents).

I.  **Motion for Garnishment Order with Respect to Reverse Mortgage Proceeds**

The government seeks an order of garnishment directing SunWest to submit to the United States the stream of $1,379.77 in monthly payments it owes to Lerch under the terms of the reverse mortgage against the Venice Property. Lerch objects, arguing that the proceeds of the reverse mortgage are exempt under Article X, Section 4 of the Florida Constitution, which states that a person's homestead "shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon." The homestead exemption is liberally construed "to protect families from destitution and want by preserving their homes." *In re Kellogg*, 197 F.3d 1116, 1120 (11th Cir. 1999). Despite that broad policy, the homestead exemption "should not be applied so as to make it an instrument of fraud or imposition upon creditors." *Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So.2d 201, 204 (Fla. 1962). Thus in *Orange Brevard*, the Supreme Court of Florida held that the proceeds of the sale of a homestead are not exempt unless the debtor reinvests the proceeds in another homestead within a reasonable time. *Id.* at 206. Even then, "only *so much* of the proceeds of the sale as are intended to be reinvested in another homestead may be exempt . . . [a]ny surplus over and above that amount should be treated as general assets of the debtor." *Id.* (emphasis in original).

Lerch's argument in favor of the homestead exemption lies on his rather conclusory assertion that the exemption protects the stream of payments under the reverse mortgage because he has "retained 100% ownership interest in his homestead property," despite increasing the mortgage to access the monthly payments. (*See* R. 418, Resp. at 2-3.) Although neither side has cited a case directly on point, cases applying the *Orange Brevard* decision hold firm to the principle that proceeds extracted from a homestead may be sheltered under the homestead exemption only where the debtor intends to reinvest them in a new homestead. For example, where a debtor sells his homestead and spends the proceeds "on miscellaneous living expenses and outstanding debts," the exemption does not apply. *See In re Gauthier*, No. 04-34338-BKC-SHF, 2007 WL 1580100, at *1-*2 (Bankr. S.D. Fla. May 30, 2007). Nor does the homestead exemption apply "where the Debtors held the funds for investment in an exempt asset other than [a] homestead," such as a life insurance annuity. *See In re Simms*, 243 B.R. 156, 158-59 (Bankr. S.D. Fla. 2000). That is because the *Orange Brevard* decision "clearly indicates that the exemption of homestead proceeds is conditioned on the intention to reinvest in another homestead, as distinguished from other exempt," or non-exempt, assets. *Id.* Here, Lerch has admitted that he uses the proceeds from the reverse mortgage as a personal income stream and there is no evidence to suggest that he intends to apply that income to a new homestead. (*See* R. 418, Resp. at 3.) Accordingly, this court agrees with the government that the homestead exemption does not apply to the reverse mortgage payments at issue.

Lerch argues in the alternative that the reverse mortgage payments are protected from garnishment under the annuity exemption set forth in Florida Statute 222.14. The statutory exemption states that the "proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person . . . who is the beneficiary of such annuity contract, unless the . . . annuity contract was effected for the benefit of such creditor." F.S.A. § 222.14. Lerch argues that the proceeds from the reverse mortgage qualify as an annuity for purposes of the exemption because the payments serve as a fixed, periodic, tax-free income stream that will be available to him over a course of years.

In grappling with whether a payment stream qualifies under the annuity exemption, the Supreme Court of Florida in *In re McCollam*, 612 So.2d 572, 574 (Fla. 1993), recognized an annuity as "a form of investment which pays periodically during the life of the annuitant or during a term fixed by contract rather than on the occurrence of a future contingency." But the fact that a debtor receives a series of payments under a contract "does not necessarily transform the agreement into an annuity contract exempted by section 222.14." *In re Solomon*, 95 F.3d 1076, 1079 (11th Cir. 1996). Instead, "[t]o qualify for the exemption, the parties to the agreement must have intended to create an annuity contract." *Id*. To determine whether the parties intended to create an annuity contract, the court looks to the four corners of the contract. *In re Conner*, 172 B.R. 119, 121 (Bankr. M.D. Fla. 1994). Relevant factors include whether the contract contains any reference to an annuity contract and whether the

6

debtor is identified as a beneficiary or payee. *Id.* It is not enough to show that a contract establishes a series of payments over time. *Id.* If it were, "all installment contracts would qualify as an annuity, and that is not what the *McCollam* decision requires." *Id.*

Lerch has not pointed to any evidence that the parties to the reverse mortgage contract at issue here intended to establish an annuity agreement. As the government points out, the term "annuity" does not appear in the contract nor does it refer to Lerch as the beneficiary or payee. (R. 421, Reply at 5-6 & Ex. C.) Instead, the contract refers to Lerch as the "borrower" and establishes a series of advance payments that the lender is entitled to receive back upon the eventual sale of the Venice Property. (Id.) That agreement is evidenced by a "borrower's note" securing the repayment, an obligation that will not terminate upon Lerch's death. (Id. Ex. C at 1.) Under these conditions, there simply is no evidence that the parties to the reverse mortgage at issue here intended to establish an annuity contract. *See In re Holt*, 422 B.R. 778, 782 (Bankr. M.D. Fla. 2010) (finding that payments made under promissory note do not qualify for annuity exemption). Because the proceeds of the reverse mortgage do not qualify for protection under either the homestead or the annuity exemption, the government's motion for a garnishment order with respect to the reverse mortgage payment stream is granted.

## II.     Motion for Garnishment Order with Respect to Versatile Payments

Turning to the government's motion to garnish the payments and earnings Lerch receives from Versatile, the parties disagree as an initial matter over whether Illinois or

federal law governs the rate at which Lerch's wages may be garnished. Lerch asserts that "[s]ince this judgment was rendered in the Northern District of Illinois, Illinois law applies." (R. 419, Resp. at 2.) The government, on the other hand, argues that these proceedings are governed by the Fair Debt Collection Procedures Act ("FDCPA"), which authorizes this court to "issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." *See* 28 U.S.C. § 3205(a). The difference is material because under Illinois law, wages are subject to garnishment at a rate of 15%, *see* 735 ILCS 5/12-803, whereas a 25% rate applies under the FDCPA, *see* 28 U.S.C. §§ 3002(5)-(6) & (9).

Under Federal Rule of Civil Procedure 69(a)(1), supplementary proceedings to facilitate the execution of a judgment "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Lerch ignores the phrase relating to federal statutes and has not developed any argument as to why the FDCPA is inapplicable here. By its own terms, the FDCPA "provides the exclusive civil procedures for the United States to recover a judgment on a debt," unless another federal law with its own procedures applies. *See* 28 U.S.C. § 3001(a), (b); *United States v. Vitek Supply Corp.*, 151 F.3d 580, 585 (7th Cir. 1998). Given this exclusivity clause, this court agrees with the government that the FDCPA governs its efforts to collect the outstanding debt, meaning that

8

the nonexempt portion of Lerch's earnings equals 25% of his disposable earnings. *See* 28 U.S.C. § 3002(9).

As for the substance of the garnishment motion, the government argues that Versatile should be ordered to submit to the United States 25% of Lerch's disposable earnings and 100% of any payments it has made with respect to Lerch's personal expenses since the date of service of the citation to discover assets, October 12, 2010. In response Lerch concedes that the government is entitled to collect 25% of his nonexempt salary, or a total of $190.97 per week, but argues that the government's motion suffers from a lack of proof that any of the other payments made by Versatile since the citation service date cover Lerch's personal, rather than business, expenses. Lerch argues that unless the government identifies with specificity the payments it seeks to garnish, its request does not pass due-process muster. He also argues that any money paid by Versatile for Lerch's personal expenses should be deemed income, such that only 25% is subject to garnishment under the FDCPA.

The government sought and received leave from this court to file a late reply to Lerch's response, and in that submission it states that Lerch's proposal to have Versatile's payments of his personal expenses garnished at a 25% rate is acceptable going forward, "but only if Versatile recalculates the gross amount of earnings it pays Lerch and amends its garnishment answer accordingly." (R. 426, Reply at 1.) Unless and until that happens, the government urges this court to order Versatile to turn over 100% of any money it pays to

9

Lerch's creditors unless Versatile is able to provide a legitimate business reason for those payments. (Id. at 1-2, 6.)

Given the parties' apparent agreement in principle that any non-business expense earnings that Lerch receives from Versatile are subject to garnishment, the court will deny the current motion without prejudice, subject to renewal after: (a) Versatile amends its answer to the writ of garnishment to include all personal expenses paid to Lerch since October 12, 2010; and (b) Versatile provides a complete accounting of all business expenses or other post-citation payments to Lerch it contends are exempt from garnishment. If, after reviewing the amended answer, the government contends that Versatile made non-exempt payments to Lerch in violation of its obligations under the citation, it may renew its motion for an order finding Versatile liable for 100% of the money transferred in violation of the citation prior to the date of the amended answer.

**Conclusion**

For the foregoing reasons, Lerch's Motion to Apply Florida Exemptions is granted. The government's Motion for Garnishment Order with respect to the proceeds of the reverse mortgage is granted and SunWest is ordered to submit to the United States the stream of $1,379.77 monthly payments it owes to Lerch. The government's Motion for Garnishment Order with respect to payments Lerch receives from Versatile is granted in part to the extent that Versatile is ordered to submit to the government 25% of Lerch's nonexempt salary and 25% of personal expenses it pays on behalf of Lerch. But the motion is denied in part

without prejudice to the extent that the government seeks to recover payments Versatile has made since October 12, 2010, with respect to Lerch's personal expenses, subject to renewal after Versatile files an amended garnishment answer in accordance with this opinion.

                              **ENTER:**

                              **Young B. Kim**
                              **United States Magistrate Judge**