# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) 04 CV 4138 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| CAPITAL TAX CORP., *et al.*, | ) |
| | ) May 31, 2012 |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER

Before the court is the government's petition for rule to show cause why SunWest Mortgage Company, Inc. ("SunWest") and Defendant William Lerch should not be held in contempt for violating the citations to discover assets and this court's July 19, 2011 garnishment order. For the following reasons, the petition is denied:

## Background

On January 13, 2011, the government served a citation to discover assets on SunWest. (R. 377.) SunWest responded by providing documents showing that it was paying Lerch $1,379.77 per month under a reverse mortgage loan agreement. (R. 433, June 29, 2012 Mem. Opinion and Ord. at 2-3.) On June 29, 2011, this court granted the government's motion for a garnishment order with respect to the $1,379.77 monthly payments. (Id. at 10.) The garnishment order states that SunWest must submit to the government the stream of $1,379.77 monthly payments it owed to Lerch. (R. 440.) The court further ordered SunWest to continue to submit the stream of these payments until the debt to the government was fully

paid or "until SunWest no longer ha[d] custody, possession or control of property belonging to Lerch," or until subsequent order of the court. (Id.) In response, SunWest forwarded the February and March 2011 payments, totaling $2,759.54, to the government. (R. 490, Govt.'s Pet. at 1.)

When the government inquired of SunWest regarding the deficiency in the amount turned over, SunWest explained that three months prior to the court's issuance of the garnishment order, Lerch had instructed SunWest to terminate the monthly payments to him. (R. 490, Ex. B.) Under the relevant provisions of the reverse mortgage agreement, Lerch had three ways of borrowing money from SunWest: (1) monthly payments; (2) a line of credit without monthly payments; or (3) a line of credit with monthly payments. (R. 513-1, Loan Agreement at 2-3.) On March 11, 2011, without informing this court or the government, Lerch requested that SunWest stop his monthly payments and issue a line of credit instead. SunWest honored the request and converted the amount available for loan advances ($183,525.18) to a line of credit ("the conversion"). (R. 490, Ex. B.) SunWest, however, froze this line of credit because of this pending matter between the government and Lerch. (Id.)

The government petitions the court pursuant to Federal Rule of Civil Procedure 69 and Illinois Supreme Court Rule 277(h) for a rule to show cause. Pursuant to Rule 69,[1] this

---

[1] Rule 69(a)(1) states that:

A money judgment is enforced by a writ of execution, unless the court directs

court must follow Illinois procedural rules to address the issues the government raises in its petition. According to Illinois Supreme Court Rule 277(h), "[a]ny person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule may be punished for contempt." The government claims in its petition that Lerch violated the citation to discover assets served on him when he requested the conversion and that SunWest violated the citation and the July 19, 2011 garnishment order when it honored Lerch's request and failed to turnover additional sums to the government. (R. 490 at 2.) The government, however, did not develop or identify any legal support for its arguments in its petition.

On March 7, 2012, the court held a motion hearing. The court expressed its opinion that the issue of whether Lerch and SunWest violated any citations or garnishment orders depended primarily on the ownership of the remaining balance of the reverse mortgage ($183,525.18). The government took the position that the court need not ask the question of who has the ownership interest in this balance because it argued that when Lerch directed SunWest to terminate the monthly stream of income, he altered the status quo, and thus violated the citation. The proper remedy for this violation, according to the government, is to order SunWest to restore the stream of income and then to submit those payments to the

---

otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

government until the balance is depleted. Lerch argued at the hearing that unless and until a monthly loan advance is paid out by SunWest, the funds available to him under the reverse mortgage contract are not his property, and therefore he does not own the balance available as a line of credit. He argued that to hold otherwise would amount to the court forcing Lerch to borrow money using his exempt real property as collateral.

At the motion hearing, the government requested time to file a more comprehensive memorandum of law in support of its petition. Lerch and SunWest likewise asked for time to oppose the petition in writing. The court granted the requests. Despite securing leave of court, the government chose not to file any memorandum of law in support of the assertions raised in its petition or the arguments it made at the motion hearing. Both Lerch and SunWest filed a response opposing the government's original petition. The government timely filed a reply on May 7, 2012.

A brief discussion of the government's reply brief is necessary before addressing the merits of its petition. In general, arguments raised and/or developed for the first time in reply briefs are considered waived and forfeited. *Broaddus v. Shields*, 665 F.3d 846, 854 (7th Cir. 2011); *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) (holding that failure to develop an argument until the filing of a reply brief constitutes waiver). In this case, despite having been given the chance to submit a brief supporting the arguments it made during the motion hearing, the government waited until its reply brief to develop its argument that both Lerch and SunWest were barred from implementing the conversion. (R. 514,

4

Govt.'s Reply at 3-6.) Also, the government waited until its reply brief to argue that because Lerch failed to advise the court of the conversion prior to the court's issuance of the garnishment order, he should be barred under the doctrine of *res judicata* from raising the conversion as a way to avoid the garnishment order. (R. 514, Govt.'s Reply at 7-8.) Given that the government was aware of the relevant events when it filed its petition, this argument should have been raised in its opening brief. Reply briefs are for replying to the arguments and facts raised by the opposing parties and not for raising facts or arguments that could have been asserted in the opening brief. The government had two chances to raise and to develop its arguments—when it first filed its petition and when the court allowed it to supplement its petition with a supporting memorandum of law—but it failed to avail itself of those chances. As stated in its order of May 10, 2011, the court will not consider arguments raised for the first time in its reply brief. (R. 517.)

**Analysis**

When a party files a petition or a motion for a rule to show cause, "the moving party is asking *only* for a preliminary order directing the alleged contemnor to show cause why the court should not find him in contempt." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010) (emphasis in original). "The purpose of a [show-cause] motion is to persuade the court that there should be a hearing at which the factfinder will ultimately evaluate whether a finding of contempt is appropriate on the evidence presented." *Sommerfield v. City of Chicago*, 252 F.R.D. 407, 413 (N.D. Ill. 2008). The issue in this petition is not whether the

court should hold Lerch and SunWest in contempt and impose sanctions, but whether the court should put them on notice that they may face sanctions if they fail to show good cause why they should not be held in contempt. The burden of establishing the appropriateness of a hearing is less demanding than that for establishing contempt, requiring only "a preliminary assessment that the facts presented implicate" that the alleged contemnors are in violation of court orders. *Id.* at 413-14 (quotation omitted). Although the mere insistence on a hearing "is never enough," what is required is merely a threshold factual showing made up of "sufficiently definite, specific, non-conjectural and detailed" allegations along with a material fact dispute that will affect the motion's outcome. *Id.* at 414.

In this case, the government failed to reach the required threshold. The government refers to the citations to discover assets and the July 19, 2011 garnishment order in its petition. The citations served upon Lerch and SunWest state in relevant part that:

> **YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to you, the judgment debtor, and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to you, the judgment debtor, until further order of court or termination of the proceedings. You are required to withhold the payment or transfer of any money or other property no more than twice the amount of the unsatisfied judgment.

(R. 377, Citation Served on SunWest; R. 455, Citation Served on Lerch (emphasis in original).) And the garnishment order directs SunWest to "submit to the [government] the stream of $1,379.77 monthly payments it owes [Lerch] which represents Lerch's nonexempt interest in those funds." (R. 440.) The record shows that in March 2011—after the service

6

of the citations but before the entry of the garnishment order—Lerch requested the conversion. (R. 490, Ex. B.) SunWest honored the request by terminating the $1,379.77 monthly loan advances to Lerch and by creating a line of credit in the amount of $183,525.18. (Id.) The government asserts that by stopping the loan advances, Lerch and SunWest essentially disposed of and interfered with non-exempt property in violation of the citations. The government further asserts that by failing to submit the loan advances to the government, SunWest violated the garnishment order. (R. 490 at 2-3.)

In response, Lerch raises three arguments why his conversion request does not put him in violation of the citation to discover assets. First, he argues that he did not interfere, transfer, or otherwise dispose of non-exempt property that belongs to him or is due to him because the funds that are available for him to borrow are not funds that belong to him. (R. 513, Lerch's Resp. at 3.) Second, Lerch submits that SunWest was not obligated to make monthly loan advances unless he continued to borrow money. Third, Lerch argues that if the funds available for borrowing are deemed funds that belong to him, these funds are exempt under Florida's homestead exemption. (R. 513, Lerch's Resp. at 5.) Because the court is persuaded by the first two arguments, it need not address the third.

The government points out in its petition that Lerch never disclosed to the government or to the court that he had effectuated the conversion when the court was addressing the issue of whether a garnishment order should be issued as to the monthly loan advances. (R. 490 at 2.) But this point is neither here nor there. The issues in the government's May 13, 2012

7

motion for a garnishment order against SunWest centered around the monthly loan advances and not the total value of the funds available for borrowing under the loan agreement. The government did not seek to have SunWest turnover the entire balance of the reverse mortgage. As the court commented during the motion hearing, the court expected Lerch to terminate the loan advances as a result of its ruling, which skewered his incentive to continue to borrow money under the reverse mortgage. The court also noted in its order dated July 22, 2011, that the court's ruling granting the garnishment order against SunWest did not force Lerch to "continue to borrow" money from SunWest. (R. 448.)

While the government claims that Lerch was prohibited from exercising his contractual right to stop borrowing money from SunWest, it fails to provide any legal support for this proposition. Even the Supreme Court decision the government belatedly cited in its reply brief, *Drye v. United States*, 528 U.S. 49 (1999), fails to support the government's position. In *Drye*, the petitioner became entitled to his deceased mother's estate worth about $233,000 in 1994. *Id.* at 52-53. At that time, the petitioner owed the federal government $325,000 in back taxes, and the government had valid tax liens against the petitioner's "property and rights to property." *Id.* at 53. To prevent the assets from going to the government, six months after he had been appointed the administrator of the estate, the petitioner disclaimed his interests in the estate. *Id.* By doing so, the estate passed to the petitioner's daughter who then created a family trust funded by the proceeds of the estate. *Id.* The petitioner was then made one of the beneficiaries of this family trust. *Id.* at 53-54.

Under the applicable state law, the assets of this trust were shielded from creditors seeking to satisfy any debts of the beneficiaries. *Id.* at 54. The government placed a tax lien on the assets of the trust anyway and sought to seize the assets to satisfy the petitioner's back taxes. *Id.* The trial court sided with the government that the assets were subject to seizure and the United States Court of Appeals for the Eighth Circuit affirmed. *Id.*

In reviewing the Eighth Circuit's decision to affirm, the *Drye* Court considered the question of whether the petitioner's *right* to disclaim his interest in his mother's estate was itself *property* or a *right to property*. *Id.* at 60-61. The *Drye* Court concluded that it was, because the petitioner exercised control over the assets of the estate when he disclaimed his interests. *Id.* The court noted that it was "beyond debate" that the petitioner "had, at his mother's death, a valuable, transferrable, legally protected right to the property at issue." *Id.* at 60. The *Drye* Court explained that the petitioner exercised control over the assets because by exercising his right to disclaim his interests, he exercised his power to channel the value of the assets to "a known other"—his daughter. *Id.* at 61.

Here, the circumstances are different. At no point did Lerch have control over the funds in the account at SunWest. Under the preexisting reverse mortgage agreement, Lerch had agreed to borrow $183,525.18 from SunWest over time in one of three ways. Originally, he chose monthly payments. But when he switched gears in March 2011 and opted for a line of credit, he did not "exercise control" over the pot of money the way the petitioner did in *Drye*. Rather, he changed the method by which he would borrow money controlled by

SunWest. He did not channel the funds to anyone particular or create a situation that would permit him to withdraw or borrow money without triggering the garnishment order. The balance remains with SunWest and SunWest is free to do what it wishes with the funds, as long as its actions do not violate the demands of the citation or the orders of this court. Under *Drye*, Lerch's contractual right to stop borrowing money does not constitute "property" or "rights to property." Having resolved the government's assertions against Lerch in Lerch's favor, there is no need to address the assertions against SunWest.

## Conclusion

For the foregoing reasons, the government's petition for a rule to show cause is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**